No. 31,686

THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, *Appellee,* v. BERYL PAUL, as County Treasurer of Dickinson County, et al., *Appellants.*

(33 P. 2d 304.)

Opinion filed June 9, 1934.

E. S. *Crawford,* of Abilene, for the appellants.

*Luther Burns, J. E. DuMars,* both of Topeka, and *Paul H. Royer,* of Abilene, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action to recover certain taxes imposed on plaintiff's property for the year 1932 by the board of county commissioners of Dickinson county, which plaintiff had paid under protest.

The facts alleged and which were not controverted were substantially as follows:

At the time of the annual settlement between the county treasurer and the board of county commissioners, October 11, 1932, there was a balance of $61,042.60 in the county general fund. The estimated receipts accruing to that fund from that date until January 1, 1934,

would swell that amount to $98,216.35. The estimated expenditures chargeable to the general fund for the same period were $122,565. The difference between these estimated receipts and the estimated expenditures, plus 10 per cent added for estimated delinquencies, was $26,783.52, which sum was the necessary amount to be raised by taxation. A levy of .57 of a mill on the county's total valuation of $47,067,847 would raise $26,828.67. This sum plus the balance on hand on October 11, 1932, together with the estimated additions thereto, would produce $125,045.02, or a substantial margin above the fiscal requirements for the period. Instead of making a levy of .57 of a mill on the county's assessed valuation, the county board made a levy of 1.0039 mills, which would raise a large sum in excess of the estimated expenditures chargeable to the general fund of the county.

The Rock Island railway company's property in Dickinson county was assessed for taxation at a valuation of $1,857,434, and the excessive tax levy of 1.0039 mills minus .57 mills, or .4339 mills, imposed an excessive tax of $805.94 on plaintiff's property, the first half of which plaintiff paid to the county treasurer under formal written protest on December 20, 1932.

Similar balances of funds existed in the county road fund and the county bridge fund at the time of the annual settlement on October 11, 1932. Estimates of receipts and expenditures chargeable to these funds were elaborately stated in plaintiff's petition, and it was alleged that similar excessive levies were made by the county board. Thus, a levy of .106 mills, together with the balance on hand, would raise sufficient funds to meet the estimated requirements on the road fund, but a levy of .424 mills.was made therefor. Such levy was excessive to the extent of .318 mills, which on plaintiff's assessed valuation made its taxes for the road fund excessive to the extent of $590.66, one-half of which it paid under formal protest on December 20, 1932. An alleged similar excessive levy over the money on hand plus estimated receipts and after deducting estimated expenditures caused an excessive imposition of taxes on plaintiff's property for the bridge fund in the sum of $564.29, the first half of which it paid under protest as above stated.

The foregoing figures and estimates are taken from plaintiff's petition, the accuracy of which may be regarded as correct, in view of defendants' demurrer lodged against the petition.

The pertinent law on the subject may be briefly summarized. Prior to the enactment of the statute of 1931 on which plaintiff

relies, an excessive levy of taxes (not fraudulently made) was not a sufficient basis for the recovery of taxes paid under protest. Such was the ruling in *State, ex rel., v. Peal,* 136 Kan. 136, 13 P. 2d 302, where the validity of the tax collections in Butler county for the year 1930 was under challenge for excessiveness of the county levy. All the then pertinent statutes were quoted or cited in the opinion, and it was held:

"A tax levy, within the limits of the statute, is not void because a larger amount is levied than actually required, unless the amount is so grossly excessive as to show a fraudulent purpose in making the levy." (Syl. ¶ 2.)

In the case before us we have to consider the bearing of chapter 310 of the Laws of 1931, which was in force when the levies complained of were made. Its subsequent repeal by chapter 316 of the Laws of 1933 (R. S. 1933 Supp. 79-2925 *et seq.*) is immaterial in the solution of the present problem. (R. S. 77-201.)

The statute of 1931 required all taxing bodies to prepare and publish a budget showing the itemized amounts to be raised by taxation and from all other sources, and the amounts to be expended by the ensuing fiscal year. In parallel columns all items included in the budget were required to be shown and the corresponding items expended during the preceding fiscal year. In such publication the governing body of the taxing district was required to designate a time and place at which it would answer questions and hear objections of taxpayers relating to the budget and proposed levies and consider amendments thereto. (Laws of 1931, ch. 310, R. S. 1931 Supp. 79-2921.) The statute also provided that—

"SECTION 1. . . . no such taxing body shall certify a levy to the county clerk which it estimates will raise an amount in excess of that portion of such budget to be derived from such levies, or which will exceed the maximum levies prescribed by law for such taxing district.

.    .    .    .    .    .    .    .    .    .    .    .

"SEC. 4. Any official who violates the provisions of section 1 of this act shall be guilty of a misdemeanor, and upon conviction shall be punished by a fine of not less than one hundred dollars ($100) nor more than five hundred dollars ($500), or by imprisonment in the county jail for a term not to exceed one year."

The statute of 1931 did not concern itself with such matters as the recovery of taxes paid under protest. While the act of 1931 required more formality than theretofore in the matter of estimating fiscal requirements, and gave the taxpaying public an opportunity to protest and object to the budgetary estimates of taxing officials,

it made no such fundamental difference in the pertinent law as to warrant such an action as the one instituted by plaintiff. The remedy for excessive levies was by protest and objection at the time and place prescribed in the published notice, and to be made before the excessive levies were actually made and certified to the county clerk. Unless the levies were grossly excessive, and on that point we express no opinion, plaintiff's statutory redress of timely protest and objection to the taxing officials, however inadequate, was its exclusive one. In 26 R. C. L. 460 it is said:

"It is indeed still held to be the law that when the taxpayer's sole complaint is that his tax is excessive in amount, his only remedy is to apply for an abatement in the manner provided by statute, and that he cannot have the collection of the tax enjoined. As in such a case a court, if it granted the relief prayed for, would enjoin only the payment of the illegal excess, the effect would be to transfer to the courts of equity the duty of determining the proper assessment in each case, which is not a judicial function unless expressly made so by statute. Even in such cases, however, it has frequently been held that an injunction will issue when a tax is so grossly excessive as to indicate fraud or intentional injustice on the part of the assessors, since relief from fraud is one of the well-recognized branches of equity jurisdiction."

There was another partial corrective in the statute against the imposition of excessive tax levies. Any official who certified to the county clerk a levy which would raise an amount of taxes in excess of the budgetary estimates was declared to be guilty of a misdemeanor which would subject him to a fine or imprisonment or both. In *State, ex rel., v. Peal,* supra, the rule there stated tacitly recognizes the right of a taxpayer to enjoin a grossly excessive levy because of the fraud which would manifestly inhere in it; but such a grievous defect is not pleaded nor is it fairly to be inferred from the allegations of plaintiff's petition.

Our attention is also directed to section 19a of chapter 319 of the Laws of 1933, R. S. 1933 Supp. 10-1120, which expressly declares that the levying of a tax which raises more money than required for the financial needs of the taxing district shall be ineffective as a basis for an action to recover taxes paid under protest. This provision, however, belongs to one of the later statutes which superseded the act under which plaintiff brought this action. So, too, the cases of *Hawkins v. Gregory,* 138 Kan. 477, 26 P. 2d 247, and *City of Independence v. Smith,* 138 Kan. 484, 26 P. 2d 268, cited by counsel, had to deal with later statutes than the act of 1931 and have no practical bearing on the legal question of present concern.

Some other matters are suggested in the briefs of counsel, but they require no discussion.

The judgment is reversed, and the cause remanded with instructions to enter judgment for defendants.